**STATE of Minnesota, Respondent,**

v.

**Frank D. SPURGIN, Appellant.**

**No. C6–83–1300.**

Supreme Court of Minnesota.

Dec. 7, 1984.

C. Paul Jones, Public Defender, Ann Remington, Asst. Public Defender, Minneapolis, for appellant.

Hubert H. Humphrey III, Atty. Gen., St. Paul, Thomas L. Johnson, Henn. County Atty., Vernon E. Bergstrom, Rick Osborne, Michael Richardson, Beverly Wolfe, Paul R. Jennings, Minneapolis, for respondent.

YETKA, Justice.

Francis Damian Spurgin was charged with first-degree murder. Spurgin had pleaded not guilty and not guilty by reason of insanity. After an omnibus hearing, the defense elected a unitary trial. During mid-trial, however, the defense moved for a bifurcated trial, which was denied. Upon completion of the unitary trial, the jury found Spurgin guilty and rejected his insanity defense. The defendant appeals. We affirm.

The defendant has two grounds for appeal. First, he claims that the trial court erred in denying his mid-trial motion for bifurcation and, second, that there was insufficient evidence to find defendant guilty of first-degree murder. We find no merit to the defendant's appeal on either issue.

The murder apparently happened during the night of September 27, 1982. On the afternoon of September 28, 1982, Jillene Johnson's body was found in the woods of Lincoln Park Reserve of the City of Bloomington. Her body was clad only in stockings. A pile of clothes was on her abdomen and other clothes and debris were scattered in the area. No underwear or identification was found. Part of a bra strap was tightly wound around her neck. A sharp blood-stained rock was close to the body, and a leather wrist band was found between the body's legs.

Medical examination showed numerous and severe injuries. A large, ragged gash in the body's scalp was caused by at least two blows, probably with the sharp rock, before death. Stab wounds, probably from a knife, were found by the left eye and were inflicted before death. The death itself was caused by strangulation, both manual and with the bra strap. The victim's jaw was broken and her breasts and sexual organs were mutilated.

Witnesses placed both the victim and Spurgin at the murder site earlier in the evening. Spurgin and the victim seemed friendly, but not overly affectionate. A resident who lives on the boundary of the park was awakened by voices in the woods at 11:30 p.m. She heard a low, monotone, and very controlled voice which she believed to be male. A female voice was scolding and not giving the other person much time to talk. The voices died down quickly.

Spurgin was arrested on the morning of September 29. After a Miranda warning, which Spurgin apparently knew by heart, the police questioned Spurgin. He admitted being in the woods with Jillene Johnson. Before being informed that Johnson was dead, Spurgin was asked for the names and ages of all those in the woods. He spoke of everyone he knew in the present tense until stating the victim's age. He stated that Johnson *"was 19"* and then corrected himself, saying, "She *is* 19." Spurgin later confessed to the killing.

The police obtained and executed a search warrant for Spurgin's residence. There they found Jillene Johnson's Minne-

sota identification card, a pair of panties, a ring, and a necklace with a cross. Johnson's mother testified that the ring and panties definitely belonged to her daughter and the cross was similar to one she had worn. A pair of jeans and a jean jacket of Spurgin's, both blood stained, were also seized. Analysis showed that the blood was human, but it could not be typed. A pair of cowboy boots and a leather belt that Spurgin was wearing when arrested were found to have human blood on them.

Spurgin's brief starts with a long recitation of why Spurgin's confession was obtained in violation of his constitutional rights. The discussion is irrelevant. The confession was never admitted at trial. Whether it was illegally obtained has no bearing on Spurgin's main contention that he was forced into a unitary trial by the possible introduction of the confession. In fact, possible constitutional challenges to the confession made it more likely it would not be admitted.

Under the present rules of criminal procedure, this problem would never have arisen. Bifurcation is now required in all cases where mental illness and guilt or innocence are both pleaded by a defendant. Minn.R.Crim.P. 20.02, subd. 6 (as found in the Minnesota Statutes vol. 9 (Supp.1983)). Under the rules in effect at the time of Spurgin's trial, however, an election could be made between a unitary or a bifurcated trial:

> If a defendant notifies the prosecuting attorney * * * of his intention to rely on the defense of mental illness or mental deficiency together with a defense of not guilty * * * the defendant shall elect: (1) Whether there shall be a separation of the two defenses with a sequential order of proof before the court or jury in a continuous trial in which the defense of not guilty shall be heard and determined first, and then the defense of the defendant's mental illness or deficiency; or (2) Whether the two defenses shall be tried and submitted together to the court or jury.

Minn.R.Crim.P. 20.02, subd. 6(2) (as found in 1983 Minnesota Statutes vol. 9 at 50–51). The rule further specifies that, in felony cases, the election shall be made at the omnibus hearing. *Id.*

In this case, the election was made before trial under the rules. After the prosecution had rested its case, the defense moved to bifurcate. They argued before the trial court that:

> Your Honor, for the record, we made a motion yesterday that the Court has taken under advisement and has had time to consider regarding our request for a bifurcated trial based on the change in direction of the County Attorney. After the completion of the Omnibus Hearing, it was our understanding that the Rules of Criminal Procedure's election for bifurcation or not does not have to be made by the Defendant until the Omnibus Hearing and we made the election based on and proceeded into the trial based on the results of the Omnibus Hearing whereby the Court over our objection admitted the use of the confession by Mr. Spurgin and we feel that based on the State's failure to use that confession that the trial should now be bifurcated, which is the purpose of my petition. Entering that statement would bear on the first portion of the trial and does not come into play until the mental illness portion of the trial, and because of that change in direction we move that the Court should allow us to change to a bifurcated trial.

In essence, the defense argues that the state forced them into a unitary trial because they threatened to introduce a damning confession made by Spurgin and, therefore, should be allowed to bifurcate in the middle of the trial.

■ Whether or not the confession was admitted is irrelevant to the choice of a unitary or bifurcated trial. Bifurcation is allowed to "obviat[e] objections on grounds of self-incrimination to the admissibility at trial of statements made by the defendant for the purpose of the compulsory mental examination * * *." Minn.R.Crim.P. 20.03,

comment (found in Minnesota Rules of Court, Desk Copy 147 (West 1983)). The confession would be admitted at the first stage, the guilt or innocence stage, of the trial. Keeping those self-incriminatory statements out of the first stage of the trial would not mitigate the confession. The harms claimed by the defendant, the psychiatrist's testimony of defendant's inculpatory statements and cross-examination of defendant concerning prior bad acts are all problems generally found in unitary trials. What the defendant really complains of is bad trial strategy. This court cannot reverse on grounds of inappropriate trial strategy. *See State v. Helenbolt,* 334 N.W.2d 400, 407 (Minn.1983).

■ Neither can Spurgin make a general constitutional challenge to the unitary trial procedure. A way to avoid self-incrimination problems was provided: the bifurcated trial. Spurgin and his attorneys voluntarily chose a unitary trial; they chose to put the psychologist on the stand; they chose to put Spurgin on the stand. A criminal defendant can waive his Fifth Amendment rights by voluntary action. *See Edwards v. Arizona,* 451 U.S. 477, 484, 101 S.Ct. 1880, 1884, 68 L.Ed.2d 378 (1981); *State v. Kivimaki,* 345 N.W.2d 759 (Minn. 1984). Potentially self-incriminating testimony was admitted as part of Spurgin's trial strategy. Such a situation is a classic case of waiver.

On the second issue, the defense is not claiming insufficiency of evidence to convict him. Clearly, there is sufficient evidence that he was the murderer. Witnesses placed him at the scene; human blood was found on his clothes; his bracelet was found at the scene; and the victim's ID, underpants, and jewelry were all found in Spurgin's room. Rather, Spurgin claims the evidence was insufficient to prove any premeditation and, thus, his first-degree murder conviction must be reduced to second-degree murder.

■ Spurgin's attorneys seem concerned that the evidence showing premeditation was circumstantial. This court has already stated, however, that "[p]remeditation is a

state of mind; it can generally only be inferred from circumstantial evidence. Consequently, circumstantial evidence may form the basis of a jury determination of premeditation." *State v. Linder,* 304 N.W.2d 902, 906 (Minn.1981) (citations omitted).

■ The jury is in the best position to weigh the circumstantial evidence. Its verdict must be given deference. *Id.* This court's scope of review is limited for the evidence must be viewed in the light most favorable to the verdict. If, on the basis of the evidence in the record, the jury could reasonably have found as it did, this court must affirm the verdict. *State v. Oevering,* 268 N.W.2d 68, 71 (Minn.1978).

■ Nonetheless, a finding of premeditation must be justified by the totality of the circumstances. *State v. McCullum,* 289 N.W.2d 89 (Minn.1979). The statute defines premeditation as to "consider, plan or prepare for, or determine to commit, the act referred to prior to its commission." Minn.Stat. § 609.18 (1982). However, the prosecution need not show extensive planning and calculated deliberation. A killer can formulate the requisite plan to commit first-degree murder "virtually instantaneously." *State v. Neumann,* 262 N.W.2d 426, 430 (Minn.1978). While length and severity of a beating could show premeditation, *State v. Walker,* 306 Minn. 105, 235 N.W.2d 810 (1975), *cert. denied,* 426 U.S. 950, 96 S.Ct. 3172, 49 L.Ed.2d 1187 (1976), a mere series of blows is not enough to justify premeditation. *State v. Swain,* 269 N.W.2d 707, 714 (Minn.1978).

In *Walker,* a robbery victim was bludgeoned to death. The bludgeoning was, however, "atypical of murder incidental to robbery." 306 Minn. at 107, 235 N.W.2d at 812. Injuries were found over the entire body. The coroner testified that the injuries were inflicted over a period of 20 to 30 minutes. *Id.* at 107 n. 1, 235 N.W.2d at 812 n. 1. The jury's finding of premeditation was upheld.

In *Swain,* the victim was killed by seven blows to the head. No other evidence of

premeditation was presented. Such evidence alone cannot support a finding of premeditation. 269 N.W.2d at 713–14.

The defense claims its case is more like *Swain* than *Walker*. There is, however, evidence of a severe and prolonged beating. At least three different instruments were used: a rock to beat, a knife to cut, and, finally, a bra strap to strangle the victim to death. *See State v. Hare*, 278 Minn. 405, 154 N.W.2d 820 (1967), *cert. denied*, 391 U.S. 925, 88 S.Ct. 1823, 20 L.Ed.2d 663 (1968) (firing second and third shot into a police officer sufficient to support premeditation). The resident testified that the male voice in the argument was calm, controlled, and monotone, indicating a lack of violent passion. The evidence thus supports a finding of premeditation.

The conviction is affirmed.