**Duane Gordon BIXLER, petitioner, Appellant,**

v.

**STATE of Minnesota, Respondent.**

**No. C5–97–181.**

Court of Appeals of Minnesota.

Sept. 16, 1997.

Review Granted Nov. 18, 1997.

---

Hubert H. Humphrey III, Attorney General, St. Paul, for respondent.

Michael O. Freeman, Hennepin County Attorney, J. Michael Richardson, Assistant County Attorney, Minneapolis, for respondent.

Mark D. Nyvold, St. Paul, for appellant.

Considered and decided by KLAPHAKE, P.J., and DAVIES and FOLEY, JJ.*

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

## OPINION

DAVIES, Judge.

Appellant Duane Bixler challenges the postconviction court's decision rejecting his arguments that his confession was involuntary and that, both at the *Rasmussen* hearing (on the admissibility of his confession) and at trial, the court should have allowed expert testimony concerning alleged psychological traits that reduced the credibility of his confession. We affirm in part, but reverse on the exclusion of expert testimony at trial. We remand for a new trial.

## FACTS

In March 1994, appellant Duane Bixler agreed to be interviewed by police concerning his wife's allegations that he had sexually abused their two-and-one-half-year-old daughter. During the interview, Bixler confessed to the abuse. He was subsequently tried and convicted of first-degree criminal sexual conduct.

Bixler's claims on appeal concern the pretrial ruling that his confession was voluntary and admissible and the refusal of the judge at both the *Rasmussen* hearing and at trial to allow introduction of expert psychological testimony concerning the voluntariness and truthfulness of his confession.

The confession interview, which followed a *Miranda* warning, was conducted in a 14-foot by 16-foot room with a window that looked out into the investigators' cubicles. The investigator testified at the *Rasmussen* hearing that Bixler's wife had informed him that Bixler, who was 30 years old at the time, had a permanent brain injury and acted childlike. The investigator testified that, although he spent a lot of time reiterating his questions because of the information he had about Bixler's mental capacity, he did not find Bixler to be "slow" or to have trouble understanding or answering questions.

The first hour of the interview was unrecorded. The investigator testified that, during this period, the two spent about one-third of the time discussing the abuse and the rest of the time discussing other topics, including Bixler's troubles with his wife and with drug use. The investigator admitted that his techniques exerted pressure on Bixler to confess. Eventually, Bixler admitted having had oral sex with his daughter. After his initial admission, Bixler agreed to give a recorded statement. The recorded statement was preceded by a second *Miranda* warning.

At the *Rasmussen* hearing, Bixler sought to exclude his confession. He argued that the taped transcript indicates that he was promised treatment for both drug use and child molestation in exchange for a confession and that the confession was, therefore, impermissibly coerced. He also asked the court to admit expert evidence from a psychologist who would testify that Bixler has a tendency to try to "please the authority figure" or to "relieve any perceived threat from the authority figure" by saying "what the authority figures want to hear," and that, because of his mental impairments, Bixler is "susceptible to coercion and * * * that [his confession] is a product of coercion and is involuntary."

The *Rasmussen* court refused to admit the expert testimony, ruling that the testimony was unnecessary to an inquiry concerning the totality of the circumstances of the confession. It also ruled that there was no coercion in the discussion of treatment during the interview. After considering numerous factors bearing on the issue of voluntariness, the *Rasmussen* court ruled that the confession would be admissible at trial.

At trial, Bixler again sought to admit the testimony of the expert; the trial court also excluded the testimony.

Bixler, having been convicted of first-degree criminal sexual conduct, now challenges the *Rasmussen* court's admission of his confession and its decision not to consider his expert's testimony. He also challenges the trial court's decision not to let the jury hear the expert's testimony.

## ISSUES

I. Did the *Rasmussen* court err by ruling that the investigator's statement (that Bixler needed to confess in order to get treatment) did not make the confession involuntary and inadmissible?

II. Did either the *Rasmussen* or trial court err by refusing to admit expert testimony on the voluntariness of Bixler's confession?

## ANALYSIS

 The state must prove by a preponderance of the evidence that a defendant's statement was made voluntarily. *State v. Thaggard,* 527 N.W.2d 804, 807 (Minn.1995) (citing *Doan v. State,* 306 Minn. 89, 91, 234 N.W.2d 824, 826 (1975)). In determining whether a statement is voluntary, the court must look at the totality of the circumstances. *State v. (Kevin) Anderson,* 298 N.W.2d 63, 65 (Minn.1980).

These factors include the defendant's age, maturity, intelligence, education, experience and ability to comprehend; the lack of or adequacy of a warning; the length and legality of the detention; the nature of the interrogation; and whether the defendant was deprived of physical needs or denied access to friends.

*Thaggard,* 527 N.W.2d at 808 (citing *State v. Jungbauer,* 348 N.W.2d 344, 346 (Minn. 1984)).

The appellate court is not bound by the trial court's determination of whether or not the confession was voluntary. Rather, its duty is "to independently determine, on the basis of all factual findings that are not clearly erroneous, whether or not the confession was voluntary."

*Id.* at 807 (quoting *State v. (Howard) Anderson,* 396 N.W.2d 564, 565 (Minn.1986)).

### I. Promise of Treatment

Bixler claims that he was promised treatment in exchange for a confession. He points in particular to the following exchange in his recorded statement:

Q: But you know you've got a problem?

A: Yeah I got a problem.

Q: And it's a big . . .

A: Got a couple of problems.

Q: A couple problems, right.

A: Drugs is one of them.

Q: Yeah, what's the other one?

A: Child molestation.

Q: Yeah, okay. And you're willing now to get help for that?

A: Yes I am.

Q: In order to do that, you've got to tell us what happened, you understand that?

A: Yes I do.

Bixler also alleges that during the earlier, unrecorded portion of the interview, the investigator told him that he had to admit that he was a child molester before he would be able to receive any kind of treatment (i.e., for chemical dependency). The investigator admitted that his statements implied that Bixler would need to admit to the crime if he was going to get treatment.

 Although our case law has expressed disapproval of the use of promises to elicit confessions, we "do not mechanically hold confessions involuntary just because a promise has been involved." *State v. Slowinski,* 450 N.W.2d 107, 112 (Minn.1990) (quoting *(Kevin) Anderson,* 298 N.W.2d at 65). Rather, the use of promises is simply a part of the totality-of-the-circumstances inquiry. *Thaggard,* 527 N.W.2d at 811; *Slowinski,* 450 N.W.2d at 112.

In *Thaggard,* the court affirmed a trial court's ruling that a statement was voluntary even though the defendant had been led to believe that he would receive treatment if he confessed. 527 N.W.2d at 811–12. The court discussed the other factors involved, including the fact that he understood the *Miranda* warning, had prior experience with the criminal justice system, had been interrogated in the afternoon for a relatively short time, was interrogated by only one officer, was allowed to take a break and to use the bathroom when necessary, did not claim he was intoxicated, and did not claim that he was threatened or physically intimidated. *Id.* at 812. The court stated that the "key fact" was the absence of any "indication that defendant was led to believe that he would not be prosecuted * * * if he confessed." *Id.*

 The *Rasmussen* court here made similar findings under the totality-of-the-circumstances test. In sum, the court found that: (1) Bixler responded appropriately through-

out the proceedings; (2) he added explanation when he thought it was necessary; (3) he had experience with the criminal justice system including prior convictions, incarceration, and numerous interviews with police;[1] (4) he was familiar with his *Miranda* rights; (5) he had very good memory for detail; (6) the interrogation was not long and was conducted in an appropriate environment at an appropriate time; (7) he agreed to be interviewed; and (8) there was no evidence of any maltreatment. The court noted his mental impairments but found that they did not, in light of the other factors, make it impossible for him to give a voluntary confession. As to the alleged promises, the court found that Bixler himself brought up the topic of treatment, that the conversations did not appear to be more than conversations, and that they were appropriate in the context of the interview. The court also noted that Bixler never recanted and made several written corrections to his statement. There is no indication that he was led to believe that he would not be prosecuted; he himself at the end of the interview acknowledged that he should probably go to jail for his conduct.

We hold that the promise of treatment in this case did not render the confession involuntary and affirm that decision by the *Rasmussen* court.

## II. Expert Evidence on Susceptibility

■ Bixler argues that expert evidence concerning his susceptibility to coercion should have been admitted both at the *Rasmussen* hearing and at trial.

In *State v. Orscanin,* 283 N.W.2d 897, 899 (Minn.1979), in discussing an omnibus court's decision that a confession was voluntary, the supreme court described the inquiry as follows:

Whether defendant's confession was voluntary turns on a ***determination of defendant's state of mind*** at the time of the confession. ***Was defendant subjectively induced*** to confess or was his confession

the product of a free-will decision? We must review the facts surrounding the confession, determine how defendant reacted to these external facts, and decide the legal significance of how he reacted.

(Emphasis added.) Bixler argues that the emphasized language suggests that the inquiry is subjective, allowing consideration of expert testimony concerning his psychological make-up and his susceptibility to coercion. Bixler, however, cites no case requiring that such testimony be admitted at a pretrial *Rasmussen* hearing.

There is, however, case law suggesting that such evidence is admissible at trial.

[I]f the trial court admits the confession, the trial court "must permit the jury to hear evidence on the circumstances surrounding the making of the confession * * * for a determination of weight and credibility * * *."

*State v. Schaeffer,* 457 N.W.2d 194, 196 (Minn.1990) (quoting *State v. Wajda,* 296 Minn. 29, 31, 206 N.W.2d 1, 2 (1973)). The *Schaeffer* court discussed *Crane v. Kentucky,* 476 U.S. 683, 688–91, 106 S.Ct. 2142, 2145–47, 90 L.Ed.2d 636 (1986), which held that a defendant was denied his right to present a defense if prohibited from presenting "evidence about the physical and psychological environment in which the confession was obtained." *Schaeffer,* 457 N.W.2d at 196. *Crane* stated that, if the jury cannot hear such evidence,

the defendant is effectively disabled from answering the one question every rational juror needs answered: If the defendant is innocent, why did he previously admit his guilt?

476 U.S. at 689, 106 S.Ct. at 2146. *Crane* noted that this issue is "entirely independent" of the voluntariness issue. *Id.*

While these cases do not necessarily mean that expert testimony on something such as a defendant's "susceptibility to coercion" would be admissible, *State v. Koskela,* 536 N.W.2d

---

1. The *Rasmussen* court mistakenly stated on the record that Bixler had, as a suspect, been interviewed two months earlier. Bixler had spoken with the same investigator two months before, but the interview concerned allegations of abuse by a different person. This error does not affect

our ultimate decision; the thrust of the court's finding was that the investigator was familiar with Bixler and his mental abilities and that Bixler had significant experience with the criminal justice system.

625 (Minn.1995), does suggest so. In *Koskela*, the defendant wanted to admit expert evidence that he suffered from a psychological disorder, which he claimed affected the reliability of his confessions. *Id.* at 629. The supreme court affirmed the trial court's ruling that the defendant's expert could testify about the nature of the disorder but that it was for the jury to decide whether the defendant suffered from it.[2] *Id.* at 630. Although not directly addressing the issue before us, *Koskela* does suggest that expert testimony could be related to the reliability or truthfulness of a defendant's confession and, therefore, be admissible.

Bixler also cites to *United States v. Hall*, 93 F.3d 1337, 1341, 1345–46 (7th Cir.1996), in which the Seventh Circuit Court of Appeals reversed a conviction, in part because of the trial court's exclusion of expert psychological testimony on the defendant's mental condition (one that made him likely to give the answers he thought the interrogators wanted) and on the phenomenon of false and coerced confessions generally. (*Hall*, interestingly, affirmed the admission of the confessions themselves as voluntary under a totality-of-the-circumstances test, noting that the interrogators did not know of the defendant's mental condition. *Id.* at 1346.)

After considering all of this case law, we hold that Bixler's expert evidence should have been allowed at trial, although its exclusion at the *Rasmussen* hearing was not error. In our view, the pretrial determination of voluntariness should focus on the conduct of the police, any external evidence of the defendant's subjective reaction, and objective evidence about the defendant's reaction and state of mind. But to admit expert psychological evidence concerning "susceptibility to coercion" should be discretionary when the determination resolves only the admissibility question, not guilt.

■ At trial, however, the defendant must be allowed to challenge the confession's truthfulness by presenting competent expert evidence demonstrating such "susceptibility to coercion"; that evidence may be crucial to

the jury's consideration of why the defendant asserts innocence after having confessed. Based on the decision to prohibit Bixler from introducing the expert testimony at trial, we reverse the conviction.

We note that the defense never qualified the witness as an expert. It may be that, after an attempt to qualify the expert, the trial court would decide that the expert could not provide "scientific * * * knowledge [that] will assist the trier of fact to understand the evidence or to determine a fact in issue." Minn. R. Evid. 702. That issue must be addressed on remand.

### DECISION

The *Rasmussen* court did not err in excluding Bixler's expert evidence on his "susceptibility to coercion" and properly found that his confession was voluntary. The trial court erred, however, by excluding that expert evidence at trial. Bixler is entitled to a new trial at which he must be allowed to present to the jury any qualified expert evidence on the issue of his susceptibility to coercion.

**Affirmed in part, reversed in part, and remanded.**

---

**2.** Because of the limitation, the defense in *Koskela* decided not to present the expert evidence.

*Koskela*, 536 N.W.2d at 630.