**STATE of Minnesota, cross-petitioner, Appellant,**

v.

**John Steven MARTIN, petitioner, Respondent.**

No. C8–98–10.

Supreme Court of Minnesota.

April 8, 1999.

---

Michael A. Hatch, Attorney General, Catherine M. Keane, Asst. Attorney General, St. Paul, for appellant.

Marvin E. Ketola, Carlton County Attorney, Thomas H. Pertler, Asst. County Attorney, Carlton, for appellant.

Gary R. Bryant–Wolf, Minneapolis, for respondent.

## OPINION

LANCASTER, Justice.

This case comes before us from a pretrial order issued by the Carlton County District Court in the murder trial of respondent, John Steven Martin. The court of appeals affirmed the trial court's order allowing expert testimony regarding respondent's susceptibility to coercion while making statements to police. The court of appeals reversed the trial court's order to exclude the trial testimony given by codefendants Lester Greenleaf and Andy Leo DeVerney at their joint trial and the trial court's order denying respondent a bifurcated trial to present a defense of mental illness or mental deficiency.

On appeal to this court, respondent seeks review of the court of appeals' decision allowing the state to introduce the codefendants' trial testimony. The state, on cross-petition, seeks review of the court of appeals' decision (1) affirming the trial court's order allowing respondent to submit expert testimony regarding his susceptibility to coercion; and (2)

reversing the trial court's order denying respondent's request for a bifurcated trial. We conclude that (1) the trial court did not clearly and unequivocally err when it refused to admit the trial testimony of the codefendants and therefore reverse the court of appeals; (2) in light of our decision in *Bixler v. State*, 582 N.W.2d 252 (Minn.1998), the issue of respondent's susceptibility to coercion is remanded to the trial court for proceedings consistent with our opinion in *Bixler*; and (3) the trial court did not err in denying respondent's request for a bifurcated trial.

### Facts

A complete recitation of the facts of this case can be found in *State v. Aubid*, 591 N.W.2d 472 (Minn. 1999), and will not be repeated here. For purposes of this opinion, we will provide a brief summary. On August 29, 1996, authorities found the body of 17-year-old Paul Antonich, who had been severely beaten and shot, in the trunk of his parents' Toyota Tercel, which was partially submerged in a drainage ditch near the Ditchbank Road in rural Carlton County. Police arrested John Alexander "Mike" Martin on August 31, 1996, and in a statement given to police after his arrest, Mike Martin implicated himself, Jamie Aubid, DeVerney, Greenleaf, and respondent in the death of Antonich.

The other four codefendants, including respondent, were subsequently taken into police custody. Police obtained from Greenleaf, DeVerney, and respondent statements substantially corroborating Mike Martin's previous statements. The five men were indicted by a grand jury for first-degree murder. Mike Martin pleaded guilty to second-degree murder in exchange for testifying against the other four codefendants; the trial court postponed his sentencing until prosecution of the codefendants is complete.

Although Mike Martin will be available to testify against respondent at trial, both Greenleaf and DeVerney, who at their own joint trial were found guilty of aiding and abetting first-degree murder, have appeared before the trial court and stated they will refuse to testify against respondent. The state sought to offset the loss of Greenleaf's and DeVerney's testimony by seeking admission of their former trial testimony. Both Greenleaf and DeVerney testified at their trial that the other three codefendants, including respondent, were principally responsible for Antonich's murder.[1]

Before trial commenced, the trial court issued a number of pretrial rulings, including the following, that are relevant to this appeal: (1) denying admission of Greenleaf's and DeVerney's prior trial testimony because it was hearsay not covered by the residual exception for unavailable declarants pursuant to Minnesota Rule of Evidence 804(b)(5) and because admission of the trial testimony would violate respondent's Confrontation Clause rights; (2) concluding that respondent had a right to explain the circumstances surrounding the statements he made to police and his susceptibility to coercion, although respondent could not present expert testimony regarding capacity to formulate intent, whether respondent possessed the necessary intent, or whether respondent was suffering from a blackout at the time of the crime; and (3) denying respondent's request for a bifurcated trial to present the defense of mental illness or mental deficiency.

Both respondent and the state commenced pretrial appeals from the trial court's orders. In an unpublished opinion, the court of appeals affirmed the trial court in part, and reversed it in part. *State v. Martin*, No. C8-98-10, 1998 WL 346670 (Minn.App. June 30, 1998). With respect to the codefendants' prior trial testimony, the court of appeals reversed the trial court and held that the testimony was admissible under the residual hearsay exception and the Confrontation Clause. The court of appeals also reversed the trial court on the issue of respondent's mental illness or mental deficiency defense, concluding that respondent had the right to present such a defense in a bifurcated trial. The court of appeals affirmed the trial court's decision allowing respondent to pres-

---

1. Both convictions are presently before us on appeal. *State v. Greenleaf*, 591 N.W.2d 488;

*State v. DeVerney*, 592 N.W.2d 837 (Minn.1999).

ent expert testimony at trial demonstrating his susceptibility to coercion.

Respondent and the state now appeal from the aspects of the court of appeals' decision that were not resolved in their favor.

### Standard of Review

In a pretrial appeal, the state must demonstrate "clearly and unequivocally" that (1) the trial court erred in its judgment, and (2) that the error will have a "critical impact" on the trial's outcome unless reversed. *See State v. Joon Kyu Kim*, 398 N.W.2d 544, 547 (Minn.1987) (citing *State v. Webber*, 262 N.W.2d 157, 159 (Minn.1977)). A trial court's decision to exclude evidence constitutes error when it is an abuse of the trial court's discretion. *See State v. Byers*, 570 N.W.2d 487, 491 (Minn.1997). Construction of a rule of procedure is a question of law subject to *de novo* review. *See State v. Nerz*, 587 N.W.2d 23 (Minn.1998) (citing *State v. Johnson*, 514 N.W.2d 551, 553 (Minn.1994)).

### I. Codefendants' Trial Testimony

The issues presented here regarding the admissibility of the codefendants' trial testimony are nearly identical to those presented in the companion case of *State v. Aubid*, 591 N.W.2d 472 (Minn. 1999). The trial court ruled that it would not admit any testimony given by codefendants Greenleaf and DeVerney at their joint trial, concluding that even if their trial testimony was admissible under the rules of evidence, the testimony must be excluded because it violated Martin's Confrontation Clause rights. The court of appeals reversed, concluding that the testimony was admissible in its entirety. *See State v. Martin*, 567 N.W.2d 62 (Minn.App. 1997). As we did in *State v. Aubid*, we reverse the court of appeals and remand the issue to the trial court.

The Sixth Amendment's Confrontation Clause provides that "[i]n all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him." U.S. Const. amend. VI. The Supreme Court has held that hearsay state-

ments may be admitted against a criminal defendant if the statements fall under a "firmly-rooted" exception to the hearsay rule or if the statements bear "particularized guarantees of trustworthiness." *Idaho v. Wright*, 497 U.S. 805, 818–19, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990). In *Aubid*, we held the trial court did not clearly and unequivocally err by concluding that the non-self-incriminatory portions of Greenleaf's and DeVerney's testimony bore insufficient guarantees of trustworthiness to warrant admission. *Aubid*, 591 N.W.2d at 479. We did, however, approve of the trial court's admission of those portions, if any, of the codefendants' testimony that squarely fall within Minn. R. Evid. 804(b)(3), the hearsay exception for statements against penal interest, provided the trial court undertake on remand the required "fact-intensive" examination of the proposed testimony to determine which portions were "truly self-inculpatory." *Aubid*, 591 N.W.2d at 480 (citing *Williamson v. United States*, 512 U.S. 594, 114 S.Ct. 2431, 129 L.Ed.2d 476 (1994)).

As in *Aubid*, we hold that the court of appeals erred when it concluded that the entire portions of the codefendants' trial testimony bore sufficient indicia of reliability to merit admission under Minn. R. Evid. 804(b)(5) (the residual or catch-all hearsay exception) and the Confrontation Clause. We are satisfied that the circumstances surrounding the testimony are not cloaked with such guarantees of trustworthiness that even the non-self-inculpatory portions are admissible under either the catch-all exception to the hearsay rule or the Confrontation Clause. We therefore remand this issue to the trial court for proceedings consistent with *Aubid*.[2]

### II. Susceptibility to Coercion

The trial court ruled that respondent has a right to present evidence concerning his susceptibility to coercion. In reaching this decision, the trial court relied upon a decision by the court of appeals in *Bixler v. State*, 568 N.W.2d 880 (Minn.App.1997). *Bixler* involved an appeal of a trial court's ruling that prohibited expert testimony regarding the

---

**2.** The state did not file a cross-petition seeking review of the court of appeals' decision affirming the exclusion of the codefendants' statements to

police. Therefore, we will not consider this issue.

credibility of a confession given by a mentally impaired defendant. In *Bixler*, the court of appeals reversed the trial court and granted a new trial, ruling that the defendant be permitted to present a defense and challenge the confession by presenting expert testimony of his susceptibility to coercion. *See Bixler*, 568 N.W.2d at 885. We then reversed the court of appeals, holding that the trial court was within its discretion in excluding the evidence. *See Bixler v. State*, 582 N.W.2d 252 (Minn.1998). Because the trial court in this matter relied upon the court of appeals' decision in *Bixler* as the basis for its ruling, we remand the issue of respondent's susceptibility to coercion to the trial court for reconsideration in light of our decision in *Bixler*.[3]

III. Mental Illness or Mental Deficiency

■ The most significant of respondent's claims here is that the trial court improperly denied him the right to present the defense of mental illness or mental deficiency in a bifurcated trial. Respondent gave notice to the state of his intention to claim mental illness or mental deficiency, relying upon the report of Dr. Charles McCafferty, a psychiatrist. Dr. McCafferty's report stated in part:

> Based on the history and my examination I concluded that at the time of the alleged offense with reasonable medical certainty, [respondent] was highly intoxicated to the point where he blacked out and had lost control of his mental faculties to the point where he was incapable of mustering any criminal intent or would be mentally competent to understand the nature or quality of any behavior or to appreciate right from wrong.

Subsequently, an additional opinion of Dr. McCafferty was attached by respondent's counsel to a motion in limine. This time, Dr. McCafferty stated that respondent was "highly intoxicated to the point where he blacked out." Finally, the respondent submitted another opinion, this time in the form of an offer of proof, that he would present expert testimony "that due to mental defect, pathological intoxication, or due to blackout,

the [respondent] meets the test of Minn.Stat. § 611.026."

The trial court rejected respondent's defense of mental illness or mental deficiency. The trial court stated that respondent's proposed defense would, in effect, turn voluntary intoxication into a mental illness or mental deficiency defense by using an alleged blackout caused by voluntary intoxication to satisfy the requirements of Minnesota's defense of mental illness or mental deficiency. The trial court stated: "[Respondent has] never been diagnosed as mentally ill, nor has he ever been diagnosed or treated suffering from any mental deficiency. Everything that's been submitted goes to the effects of his use of alcohol, and again, how that affected him before, during, and after the incident occurred." The trial court also rejected a defense of involuntary intoxication, stating:

> the [respondent] has never maintained that he was laboring under the effects of involuntary intoxication again before, during or after this offense occurred, and so what we have plainly and simply is a circumstance[ ] where the defense has raised the issues surrounding voluntary intoxication and has also referenced possible blackout that may have occurred during that intoxication.

The court of appeals reversed, stating that "[r]egardless of the strength of the proffered evidence * * * we find no authority for denying a defendant the right to present such a defense, as the district court appears to have done by stating there would be no bifurcated trial." *Martin*, 1998 WL 346670, at *4.

We begin our review by looking at the statute controlling the defense of mental illness or mental deficiency, which provides:

> No person shall be tried, sentenced, or punished for any crime while mentally ill or mentally deficient so as to be incapable of understanding the proceedings or making a defense; but the person shall not be excused from criminal liability except upon proof at the time of committing the alleged criminal act the person was laboring under

---

**3.** The court of appeals in this case did not reach the issue of susceptibility to coercion because it concluded the state had not proven critical im-

pact. Given our decision to remand in light of our reversal in *Bixler v. State*, 582 N.W.2d 252, we do reach the issue of critical impact.

such a defect of reason, from one of these causes, as not to know the nature of the act, or that it was wrong.

Minn.Stat. § 611.026 (1998).

■■ Defendants have a due process right under the federal and Minnesota constitutions to assert a mental illness defense. *See State v. Hoffman,* 328 N.W.2d 709, 715 (Minn.1982). We have interpreted section 611.026 to require that a defendant must prove that at the time of the act: (1) the defendant did not know the nature of the act; (2) even if the defendant did, the defendant did not understand that the act was wrong; and (3) the defendant's failure to know the nature of the act or that it was wrong was the result of a defect of reason caused by mental illness or mental deficiency. *See State v. Persitz,* 518 N.W.2d 843 (Minn.1994). The law presumes sanity and the defendant has the burden of proving each element of the defense of mental illness or mental deficiency by a preponderance of the evidence. *See State v. Bouwman,* 354 N.W.2d 1, 4 (Minn.1984).

■■ Regarding defenses relying upon a defendant's use of alcohol or drugs, we have consistently held that mental illness caused by voluntary intoxication is not a defense. *See State v. Patch,* 329 N.W.2d 833, 836 (Minn.1983) (holding that "a defendant's insanity due to voluntary intoxication is not a defense"); *see also State v. Clarken,* 260 N.W.2d 463, 463 (Minn.1977) (citing *City of Minneapolis v. Altimus,* 306 Minn. 462, 238 N.W.2d 851 (1976)). The defense of involuntary intoxication has been recognized by this court. *See Altimus,* 306 Minn. at 467, 238 N.W.2d at 856. Four types of involuntary intoxication have been recognized, including pathological intoxication. *See id.* Pathological intoxication has been defined as "intoxication grossly excessive in degree, given the amount of the intoxicant, to which the actor does not know he is susceptible." *Id.* (citation omitted). We further explained that "[p]athologically intoxicated offenders have been held not criminally responsible for their acts when they ingested the intoxicant not

knowing of their special susceptibility to its effects." *Id.* (citation omitted). If a defendant is mentally deficient because of involuntary intoxication, the defendant may be excused from criminal responsibility only if temporarily insane as defined in section 611.026. *See id.* at 857. Finally, it should be noted involuntary intoxication is "a most unusual condition." *Id.* at 858.

The Minnesota Rules of Criminal Procedure provide that a defendant who raises a defense of not guilty by reason of mental illness or mental deficiency receives a bifurcated trial. *See* Minn. R.Crim. P. 20.02, subd. 6(2).[4] The first stage of the trial determines the guilt of the defendant. If the defendant is found guilty, the second stage determines if the conduct should be excused because of mental illness. *See id.*

We are aware of previous cases where we have stated in dicta that a defendant's invocation of a mental illness or mental deficiency defense required a bifurcated trial. *See, e.g., State v. Provost,* 490 N.W.2d 93, 97 (Minn. 1992); *State v. Spurgin,* 358 N.W.2d 648, 650 (Minn.1984). However, unlike the instant case, neither of these cases presented the issue of whether the mental illness or mental deficiency alleged by the defendant was sufficient to require a bifurcated trial. *See Provost,* 490 N.W.2d at 97 (issue before court was presentation of evidence regarding intent during first stage of bifurcated trial); *Spurgin,* 358 N.W.2d at 650–51 (issue before court was defendant's desire to bifurcate unitary trial following the prosecution's presentation of its case).

In the case of *State v. Lee,* we affirmed a trial court's decision to deny the defendant a bifurcated trial because there was "little or no support in the record for a mental illness defense." 491 N.W.2d 895, 900 (Minn.1992). We noted in *Lee* that it is the "function of the jury to determine the ultimate question as to whether or not the appropriate [mental] capacity exists." *Id.* (quoting *Hoffman,* 328 N.W.2d at 717). Our decision to affirm the trial court in *Lee* turned on the defendant's failure to give notice to the prosecution of his

---

4. Prior to a 1983 amendment to our Rules of Criminal Procedure, a defendant raising the defense of mental illness or mental deficiency could

elect either a unitary or bifurcated trial. *See State v. Spurgin,* 358 N.W.2d 648, 650 (Minn. 1984).

intent to present a mental illness defense. *See Lee,* 491 N.W.2d at 900–01. We also stated that if the defendant was able to demonstrate evidence of mental illness or mental deficiency, the defendant could have renewed his request for a bifurcated trial. *Id.*

The narrow issue presented to us on appeal is whether a defendant who pleads not guilty by reason of mental illness or mental deficiency must make a prima facie showing before a bifurcated trial is ordered. As our cases have never before answered this question, we look to our analysis of other defenses for guidance. Perhaps the best starting point is *City of Minneapolis v. Altimus,* because in that case we closely analyzed the law as it applied to the defenses of involuntary intoxication and mental illness and mental deficiency. In *Altimus,* we reversed the defendant's conviction for careless driving and hit-and-run because the trial court failed to instruct the jury on the defense of temporary insanity due to involuntary intoxication. 306 Minn. at 472, 238 N.W.2d at 858. Significantly, we wrote that "such an instruction was necessary because defendant introduced evidence sufficient to raise the defense of temporary insanity due to involuntary intoxication." *Id.* While we acknowledge the differences in the procedural posture of *Altimus,* which came after trial in contrast to the pretrial appeal before us, we are convinced that implicit in that decision is the notion that a prima facie showing is necessary before a trial will be bifurcated. This conclusion is bolstered by other cases reviewing criminal defenses. In *State v. Brodie,* 532 N.W.2d 557 (Minn.1995), we issued an order reversing the court of appeals because, in part, the defendant had not made a prima facie showing of the defense of justification by necessity so as to require a jury instruction where the crime charged was aggravated driving while intoxicated. In *State v. Charlton,* 338 N.W.2d 26, 29 (Minn.1983), we stated that a defendant must meet an initial burden of production by producing threshold evidence that would make the defense of duress an issue in the case, thereby shifting the burden of persuasion to the state, where the crime charged was the specific intent crime of aggravated robbery.

The same reasoning—placing on the defendant some threshold burden—should apply to the defense of mental illness or mental deficiency. We see no value in requiring a bifurcated trial when a defendant has failed to make a prima facie showing of mental illness or mental deficiency. A defendant must allege threshold evidence of mental illness or mental deficiency sufficient to raise a defense under each of the elements found in section 611.026 before a trial will be bifurcated pursuant to Minn. R.Crim. P. 20.02, subd. 6(2). This decision neither requires nor invites trial courts to weigh the evidence offered by a defendant to support a claim of mental illness or mental deficiency. *See Hoffman,* 328 N.W.2d at 717 (stating that it was jury's role to determine mental capacity). Instead, we hold that a defendant must present prima facie evidence of mental illness or mental deficiency before being afforded a bifurcated trial. If a defendant makes such a showing, the bifurcation of the trial will be controlled by the rules of criminal procedure and our cases interpreting the rules.

■ Applying this rule of law to the facts of this case, we conclude that respondent failed to meet his burden of producing evidence sufficient to raise the defense of mental illness or mental deficiency and, thus, he is not entitled to a bifurcated trial. Respondent has presented evidence from experts demonstrating that he may have been impaired by alcohol when the murder occurred. We agree with the trial court that the facts alleged by respondent only rise to the level of voluntary intoxication, which cannot be the basis of a claim of mental illness or mental deficiency. *See Clarken,* 260 N.W.2d at 463. While involuntary intoxication in the form of pathological intoxication may be a defense in a rare case, respondent did not produce any evidence indicating that he suffered from and was unaware of a special susceptibility to the effects of alcohol. *See Altimus,* 306 Minn. at 468–69, 238 N.W.2d at 856. Furthermore, we have rejected claims that self-induced intoxication by a chronic alcoholic amounts to involuntary intoxication. *See Patch,* 329 N.W.2d at 836. The trial court considered the evidence submitted by respondent and properly concluded that the respondent failed

to make a prima facie showing of mental illness or mental deficiency.

Therefore, we reverse the court of appeals and reinstate the ruling of the trial court that, on these facts, respondent is not entitled to present the defense of mental illness or mental deficiency in a bifurcated trial. Accordingly, we remand this case to the trial court for further proceedings.

Reversed and remanded.

PAGE, J., took no part in the consideration or decision of this case.