*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0855**

State of Minnesota,
Respondent,

vs.

Warren Dean Schroyer,
Appellant.

**Filed April 27, 2015
Reversed
Ross, Judge**

St. Louis County District Court
File No. 69DU-CR-12-1756

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Mark S. Rubin, St. Louis County Attorney, Nathaniel T. Stumme, Assistant County Attorney, Duluth, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Richard Schmitz, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Ross, Presiding Judge; Kirk, Judge; and Reilly, Judge.

**U N P U B L I S H E D   O P I N I O N**

**ROSS**, Judge

Warren Schroyer punched through the glass door of someone else's home shortly after three o'clock one morning because he believed people intent on killing him were close behind. The state charged Schroyer criminally for the break-in, and Schroyer

attempted to raise a mental-illness defense. A psychologist opined that Schroyer, who previously was diagnosed by other professionals as having delusional paranoia and other mental illnesses, likely did not know the nature of this action. The district court rejected the attempt by concluding that Schroyer failed to offer threshold evidence that his inability to appreciate the nature of his act resulted from his mental illness, rather than from his recent use of alcohol and methamphetamine. Because Schroyer produced evidence that might persuade a reasonable fact finder that his inability to appreciate the nature of his act resulted from mental illness, we reverse.

## FACTS

Warren Schroyer has a lengthy history of diagnosed mental illness. His diagnoses have included major and severe depression, polysubstance dependence, paranoid delusions, bipolar disorder, psychotic disorder, and antisocial personality disorder. In May 2012, Schroyer resided at Miller-Dwan Medical Center and received treatment for his psychotic symptoms. The center discharged Schroyer with directions to seek additional treatment.

Police arrested Schroyer four days later in the early morning hours. He had punched through the glass door of a residence and said he was fleeing people who were trying to kill him. Schroyer could not identify these people and police found no evidence that anyone had been pursuing Schroyer. They took him to the Anoka Metro Regional Treatment Center, which admitted him for psychiatric treatment. The state nevertheless charged Schroyer with first-degree burglary, second-degree assault, and first-degree criminal damage to property.

Schroyer's counsel indicated his intent to raise a mental-illness defense and requested a mental examination. The district court ordered Dr. Gerald Henkel-Johnson to examine Schroyer specifically to provide his opinion under Rule 20.02 of the Minnesota Rules of Criminal Procedure and advise the court as to

> whether, because of mental illness or deficiency, the defendant, at the time of commission of the offense(s) charged, was laboring under such a defective reason as not to know the nature of the act constituting the offense(s) with which defendant is charged.

Dr. Henkel-Johnson filed his report three months later. In it, he offered what appears to be both a medical opinion and a legal opinion in a section he entitled, "Conclusions Regarding Criminal Responsibility – Rule 20.02":

> It is this examiner's opinion that Mr. Schroyer evidenced significant psychosis during the general time of the alleged incident. . . .  At the specific time of the incident, Mr. Schroyer was likely in a delusional and confused state and did not know the nature of the act. However, as per his own admission, he used alcohol and injected methamphetamines just prior to the alleged offense . . . . It is this examiner's understanding that behavior due to the use of intoxicating substances is only defensible if that ingestion was involuntary (see City of Minneapolis v. Altimus). Indeed, Mr. Schroyer's use of alcohol and drugs, though it could have been done in a psychotic state, was not involuntary. Thus it is this examiner's opinion that he is criminally responsible.

Based on Dr. Henkel-Johnson's report, the district court ruled that Schroyer failed to offer threshold evidence entitling him to raise a mental-illness defense. Schroyer's attorney asked the district court to reconsider, highlighting Schroyer's lengthy and documented history of mental illness and noting that the court could rely on this evidence as well as the report. The district court examined the reports but affirmed its ruling. It

3

stated, "Despite Defendant's mental illness history, the [rule 20.02] report indicates that Defendant was operating under the required impairment as a result of ingesting alcohol and methamphetamines. The report does not state that prior to ingesting the drugs, that Defendant would have met the requirement of the statute."

The district court held a stipulated-facts trial and found Schroyer guilty of first-degree burglary and first-degree criminal damage to property. Schroyer appeals from his conviction.

## D E C I S I O N

Schroyer argues that the district court denied him a fair trial by erroneously prohibiting him from presenting a mental-illness defense. Criminal defendants have a due process right to present a mental illness defense. *State v. Hoffman*, 328 N.W.2d 709, 715 (Minn. 1982). The right to present the defense is not absolute. *State v. McClenton*, 781 N.W.2d 181, 189 (Minn. App. 2010). A defendant seeking to raise this defense must first "allege threshold evidence of mental illness." *State v. Martin*, 591 N.W.2d 481, 487 (Minn. 1999). This creates merely a "burden of production" that a defendant can satisfy by presenting evidence that, at the time of the alleged crime, he "did not know the nature of the act" because of "mental illness or mental deficiency." *See id.* at 486–87. Because this is only a burden of production, district courts may not weigh the evidence when analyzing whether the defendant has met this burden. *See id.* at 487.

The record informs us that Schroyer presented evidence that, at the time of the home entry, he did not know the nature of his act. As Dr. Henkel-Johnson's report put it, "At the specific time of the incident, Mr. Schroyer was likely in a delusional and

4

confused state and did not know the nature of the act." The district court acknowledged this, and the state does not challenge the finding. Schroyer met the first half of his burden.

The record contains no direct evidence about the second element of the defense—the cause of the inability to perceive the act's nature. This may be due to Dr. Henkel-Johnson's straying beyond the district court's request. Rather than providing a strictly medical opinion, the doctor gave his two legal opinions that "behavior due to the use of intoxicating substances is only defensible if that ingestion was voluntary (see City of Minneapolis v. Altimus)" and that Schroyer is "criminally responsible" because, although "Schroyer's use of alcohol and drugs . . . could have been done in a psychotic state," the use "was not involuntary."

The doctor's opinion statements lend themselves to at least three different interpretations. Each interpretation fosters the same result.

The first interpretation of Dr. Henkel-Johnson's statements is that Schroyer's inability to perceive the nature of his act resulted from his use of intoxicants. But one can arrive at this meaning only by inference from the doctor's legal assessment. The district court appears to have followed this approach, expressly determining that "the report indicates that Defendant was operating under the required impairment as a result of ingesting alcohol and methamphetamines." This raises a legal error. It indicates that the district court may have relied on Dr. Henkel-Johnson's apparent legal determinations that an individual who is in a psychotic state and who uses intoxicants necessarily is disqualified from raising a mental-illness defense and that a defendant's use of

5

intoxicants while mentally ill renders him "criminally responsible" regardless of the source of his mental state. We find no support in the law for either of Dr. Henkel-Johnson's legal premises. More significantly, given the apparent and faulty legal premises of the doctor's ostensibly medical opinion, the district court's reliance on the report does not meet *Martin*'s requirement that district courts must determine merely whether the defendant has made a "threshold showing" of a mental-illness defense. *See id.* Ultimately, it is the fact finder's role to determine the actual source of the defendant's inability to appreciate the nature of his act based on the evidence presented. *See State v. Brom*, 463 N.W.2d 758, 764 (Minn. 1990). Based on the record we are convinced that Schroyer has alleged facts supporting a mental-illness defense.

A second plausible interpretation of Dr. Henkel-Johnson's report also supports our holding. One might interpret the report as not ruling out that Schroyer's mental illness rendered him incapable of perceiving the nature of his act. The report states that Schroyer's use of alcohol and drugs "could have been done in a psychotic state." Relying on this opinion, the state maintains that Schroyer's inability to disentangle the effects of his mental illness and intoxication precludes him from raising his defense. The state presents no caselaw support for the argument, and we think it contradicts the idea that the fact finder has broad deference to assign weight to testimony about the source of a defendant's mental illness. *See State v. Peterson*, 764 N.W.2d 816, 822 (Minn. 2009).

A third interpretation is that Dr. Henkel-Johnson never actually answered the district's court's request for an opinion about the source of Schroyer's inability to perceive his actions. If this is the meaning, the pretrial record contains nearly undisputed

evidence that Schroyer suffered from mental illnesses immediately before the event and that he could not perceive the nature of the act itself. This evidence meets the threshold burden.

If "a reasonable probability" exists that Schroyer's inability to present his mental-illness defense "contributed" to his conviction, we must reverse. *See State v. Kelly*, 435 N.W.2d 807, 813 (Minn. 1989). Although the state has a reasoned basis to contest the mental-illness defense factually, we are satisfied that the evidence is enough to persuade a fact finder that Schroyer meets the elements of the defense. We therefore reverse.

**Reversed.**