## CRANE v. KENTUCKY

No. 85–5238.   Argued April 23, 1986—Decided June 9, 1986

O'CONNOR, J., delivered the opinion for a unanimous Court.

*Frank W. Heft, Jr.*, argued the cause for petitioner.   With him on the briefs were *J. David Niehaus* and *Daniel T. Goyette*.

*John S. Gillig*, Assistant Attorney General of Kentucky, argued the cause for respondent.   With him on the brief

were *David L. Armstrong*, Attorney General, and *Virgil W. Webb III*, Assistant Attorney General.

JUSTICE O'CONNOR delivered the opinion of the Court.

Prior to his trial for murder, petitioner moved to suppress his confession. The trial judge conducted a hearing, determined that the confession was voluntary, and denied the motion. At trial, petitioner sought to introduce testimony about the physical and psychological environment in which the confession was obtained. His objective in so doing was to suggest that the statement was unworthy of belief. The trial court ruled that the testimony pertained solely to the issue of voluntariness and was therefore inadmissible. The question presented is whether this ruling deprived petitioner of his rights under the Sixth and Fourteenth Amendments to the Federal Constitution.

I

On August 7, 1981, a clerk at the Keg Liquor Store in Louisville, Kentucky, was shot to death, apparently during the course of a robbery. A complete absence of identifying physical evidence hampered the initial investigation of the crime. A week later, however, the police arrested petitioner, then 16 years old, for his suspected participation in an unrelated service station holdup. According to police testimony at the suppression hearing, "just out of the clear blue sky," petitioner began to confess to a host of local crimes, including shooting a police officer, robbing a hardware store, and robbing several individuals at a bowling alley. App. 4. Their curiosity understandably aroused, the police transferred petitioner to a juvenile detention center to continue the interrogation. After initially denying any involvement in the Keg Liquors shooting, petitioner eventually confessed to that crime as well.

Subsequent to his indictment for murder, petitioner moved to suppress the confession on the grounds that it had been impermissibly coerced in violation of the Fifth and Fourteenth

Amendments to the Federal Constitution. At the ensuing hearing, he testified that he had been detained in a windowless room for a protracted period of time, that he had been surrounded by as many as six police officers during the interrogation, that he had repeatedly requested and been denied permission to telephone his mother, and that he had been badgered into making a false confession. Several police officers offered a different version of the relevant events. Concluding that there had been "no sweating or coercion of the defendant" and "no overreaching" by the police, the court denied the motion. *Id.*, at 21.

The case proceeded to trial. In his opening statement, the prosecutor stressed that the Commonwealth's case rested almost entirely on petitioner's confession and on the statement of his uncle, who had told the police that he was also present during the holdup and murder. Tr. 10–14. In response, defense counsel outlined what would prove to be the principal avenue of defense advanced at trial—that, for a number of reasons, the story petitioner had told the police should not be believed. The confession was rife with inconsistencies, counsel argued. For example, petitioner had told the police that the crime was committed during daylight hours and that he had stolen a sum of money from the cash register. In fact, counsel told the jury, the evidence would show that the crime occurred at 10:40 p.m. and that no money at all was missing from the store. Beyond these inconsistencies, counsel suggested, "[t]he very circumstances surrounding the giving of the [confession] are enough to cast doubt on its credibility." *Id.*, at 16. In particular, she continued, evidence bearing on the length of the interrogation and the manner in which it was conducted would show that the statement was unworthy of belief.

In response to defense counsel's opening statement, and before any evidence was presented to the jury, the prosecutor moved *in limine* to prevent the defense from introducing any testimony bearing on the circumstances under which the

confession was obtained. Such testimony bore only on the "voluntariness" of the confession, the prosecutor urged, a "legal matter" that had already been resolved by the court in its earlier ruling. App. 27. Defense counsel responded that she had no intention of relitigating the issue of voluntariness, but was seeking only to demonstrate that the circumstances of the confession "cas[t] doubt on its validity and its credibility." *Ibid.* Rejecting this reasoning, the court granted the prosecutor's motion. Although the precise contours of the ruling are somewhat ambiguous, the court expressly held that the defense could inquire into the inconsistencies contained in the confession, but would not be permitted to "develop in front of the jury" any evidence about the duration of the interrogation or the individuals who were in attendance. *Id.,* at 28.

After registering a continuing objection, petitioner invoked a Kentucky procedure under which he was permitted to develop a record of the evidence he would have put before the jury were it not for the court's evidentiary ruling. That evidence included testimony from two police officers about the size and other physical characteristics of the interrogation room, the length of the interview, and various other details about the taking of the confession. *Id.,* at 45–53.

The jury returned a verdict of guilty, and petitioner was sentenced to 40 years in prison. The sole issue in the ensuing appeal to the Kentucky Supreme Court was whether the exclusion of testimony about the circumstances of the confession violated petitioner's rights under the Sixth and Fourteenth Amendments to the Federal Constitution. Over one dissent, the court rejected the claim and affirmed the conviction and sentence. 690 S. W. 2d 753 (1985). The excluded testimony "related solely to voluntariness," the court reasoned. *Id.,* at 754. Although evidence bearing on the credibility of the confession would have been admissible, under established Kentucky procedure a trial court's pretrial voluntariness determination is conclusive and may not be

relitigated at trial. Because the proposed testimony about the circumstances of petitioner's confession pertained only to the voluntariness question, the court held, there was no error in keeping that testimony from the jury.

Because the reasoning of the Kentucky Supreme Court is directly at odds with language in several of this Court's opinions, see, *e. g.*, *Lego* v. *Twomey*, 404 U. S. 477, 485–486 (1972), and because it conflicts with the decisions of every other state court to have confronted the issue, see, *e. g.*, *Beaver* v. *State*, 455 So. 2d 253, 256 (Ala. Crim. App. 1984); *Palmes* v. *State*, 397 So. 2d 648, 653 (Fla. 1981), we granted the petition for certiorari. 474 U. S. 1019 (1985). We now reverse and remand.

## II

The holding below rests on the apparent assumption that evidence bearing on the voluntariness of a confession and evidence bearing on its credibility fall in conceptually distinct and mutually exclusive categories. Once a confession has been found voluntary, the Supreme Court of Kentucky believed, the evidence that supported that finding may not be presented to the jury for any other purpose. This analysis finds no support in our cases, is premised on a misconception about the role of confessions in a criminal trial, and, under the circumstances of this case, contributed to an evidentiary ruling that deprived petitioner of his fundamental constitutional right to a fair opportunity to present a defense. *California* v. *Trombetta*, 467 U. S. 479, 485 (1984).

It is by now well established that "certain interrogation techniques, either in isolation, or as applied to the unique characteristics of a particular suspect, are so offensive to a civilized system of justice that they must be condemned under the Due Process Clause of the Fourteenth Amendment." *Miller* v. *Fenton*, 474 U. S. 104, 109 (1985). To assure that the fruits of such techniques are never used to secure a conviction, due process also requires "that a jury [not] hear a confession unless and until the trial judge [or some

other independent decisionmaker] has determined that it was freely and voluntarily given." *Sims* v. *Georgia,* 385 U. S. 538, 543–544 (1967). See generally *Jackson* v. *Denno,* 378 U. S. 368 (1964).

In laying down these rules the Court has never questioned that "evidence surrounding the making of a confession bears on its credibility" as well as its voluntariness. *Id.,* at 386, n. 13. As the Court noted in *Jackson,* because "questions of credibility, whether of a witness or of a confession, are for the jury," the requirement that the court make a pretrial *voluntariness* determination does not undercut the defendant's traditional prerogative to challenge the confession's *reliability* during the course of the trial. *Ibid.* To the same effect was *Lego* v. *Twomey, supra,* where the Court stated,

> "Nothing in *Jackson* [v. *Denno*] questioned the province or capacity of juries to assess the truthfulness of confessions. Nothing in that opinion took from the jury any evidence relating to the accuracy or weight of confessions admitted into evidence. A defendant has been as free since *Jackson* as he was before to familiarize a jury with circumstances that attend the taking of his confession, including facts bearing upon its weight and voluntariness." *Id.,* at 485–486.

Thus, as *Lego* and *Jackson* make clear, to the extent the Court has addressed the question at all, it has expressly assumed that evidence about the manner in which a confession was secured will often be germane to its probative weight, a matter that is exclusively for the jury to assess.

The decisions in both *Jackson* and *Lego,* while not framed in the language of constitutional command, reflect the common-sense understanding that the circumstances surrounding the taking of a confession can be highly relevant to two separate inquiries, one legal and one factual. The manner in which a statement was extracted is, of course, relevant to the purely legal question of its voluntariness, a question most, but not all, States assign to the trial judge alone to re-

solve. See *Jackson* v. *Denno, supra,* at 378. But the physical and psychological environment that yielded the confession can also be of substantial relevance to the ultimate factual issue of the defendant's guilt or innocence. Confessions, even those that have been found to be voluntary, are not conclusive of guilt. And, as with any other part of the prosecutor's case, a confession may be shown to be "insufficiently corroborated or otherwise . . . unworthy of belief." *Lego* v. *Twomey, supra,* at 485–486. Indeed, stripped of the power to describe to the jury the circumstances that prompted his confession, the defendant is effectively disabled from answering the one question every rational juror needs answered: If the defendant is innocent, why did he previously admit his guilt? Accordingly, regardless of whether the defendant marshaled the same evidence earlier in support of an unsuccessful motion to suppress, and entirely independent of any question of voluntariness, a defendant's case may stand or fall on his ability to convince the jury that the manner in which the confession was obtained casts doubt on its credibility.

This simple insight is reflected in a federal statute, 18 U. S. C. § 3501(a), the Federal Rules of Evidence, Fed. Rule Evid. 104(e), and the statutory and decisional law of virtually every State in the Nation. See, *e. g.,* Mont. Code Ann. § 46–13–301(5) (1983); *Palmes* v. *State, supra,* at 653. We recognize, of course, that under our federal system even a consensus as broad as this one is not inevitably congruent with the dictates of the Constitution. We acknowledge also our traditional reluctance to impose constitutional constraints on ordinary evidentiary rulings by state trial courts. In any given criminal case the trial judge is called upon to make dozens, sometimes hundreds, of decisions concerning the admissibility of evidence. As we reaffirmed earlier this Term, the Constitution leaves to the judges who must make these decisions "wide latitude" to exclude evidence that is "repetitive . . . , only marginally relevant" or poses an undue risk of

"harassment, prejudice, [or] confusion of the issues." *Delaware* v. *Van Arsdall,* 475 U. S. 673, 679 (1986). Moreover, we have never questioned the power of States to exclude evidence through the application of evidentiary rules that themselves serve the interests of fairness and reliability—even if the defendant would prefer to see that evidence admitted. *Chambers* v. *Mississippi,* 410 U. S. 284, 302 (1973). Nonetheless, without "signal[ing] any diminution in the respect traditionally accorded to the States in the establishment and implementation of their own criminal trial rules and procedures," we have little trouble concluding on the facts of this case that the blanket exclusion of the proffered testimony about the circumstances of petitioner's confession deprived him of a fair trial. *Id.,* at 302–303.

Whether rooted directly in the Due Process Clause of the Fourteenth Amendment, *Chambers* v. *Mississippi, supra,* or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, *Washington* v. *Texas,* 388 U. S. 14, 23 (1967); *Davis* v. *Alaska,* 415 U. S. 308 (1974), the Constitution guarantees criminal defendants "a meaningful opportunity to present a complete defense." *California* v. *Trombetta,* 467 U. S., at 485; cf. *Strickland* v. *Washington,* 466 U. S. 668, 684–685 (1984) ("The Constitution guarantees a fair trial through the Due Process Clauses, but it defines the basic elements of a fair trial largely through the several provisions of the Sixth Amendment"). We break no new ground in observing that an essential component of procedural fairness is an opportunity to be heard. *In re Oliver,* 333 U. S. 257, 273 (1948); *Grannis* v. *Ordean,* 234 U. S. 385, 394 (1914). That opportunity would be an empty one if the State were permitted to exclude competent, reliable evidence bearing on the credibility of a confession when such evidence is central to the defendant's claim of innocence. In the absence of any valid state justification, exclusion of this kind of exculpatory evidence deprives a defendant of the basic right to have the prosecutor's case encounter and "survive the cru-

cible of meaningful adversarial testing." *United States* v. *Cronic*, 466 U. S. 648, 656 (1984). See also *Washington* v. *Texas, supra,* at 22–23.

Under these principles, the Kentucky courts erred in foreclosing petitioner's efforts to introduce testimony about the environment in which the police secured his confession. As both *Lego* and *Jackson* make clear, evidence about the manner in which a confession was obtained is often highly relevant to its reliability and credibility. Such evidence was especially relevant in the rather peculiar circumstances of this case. Petitioner's entire defense was that there was no physical evidence to link him to the crime and that, for a variety of reasons, his earlier admission of guilt was not to be believed. To support that defense, he sought to paint a picture of a young, uneducated boy who was kept against his will in a small, windowless room for a protracted period of time until he confessed to every unsolved crime in the county, including the one for which he now stands convicted. We do not, of course, pass on the strength or merits of that defense. We do, however, think it plain that introducing evidence of the physical circumstances that yielded the confession was all but indispensable to any chance of its succeeding. Especially since neither the Supreme Court of Kentucky in its opinion, nor respondent in its argument to this Court, has advanced any rational justification for the wholesale exclusion of this body of potentially exculpatory evidence, the decision below must be reversed.

Respondent contends that any error was harmless since the very evidence excluded by the trial court's ruling ultimately came in through other witnesses. Petitioner concedes, and we agree, that the erroneous ruling of the trial court is subject to harmless error analysis. Tr. of Oral Arg. 7; cf. *Delaware* v. *Van Arsdall, supra.* We believe, however, that respondent's harmless error argument should be directed in the first instance to the state court.

Accordingly, the judgment of the Supreme Court of Kentucky is reversed, and the case is remanded for proceedings not inconsistent with this opinion.

*So ordered.*