Present: Lacy, Hassell, Keenan, Koontz, Kinser, and Lemons, JJ., and Whiting, S.J.

LIVINGSTON PRITCHETT, III

v. Record No. 010030

COMMONWEALTH OF VIRGINIA

OPINION BY
SENIOR JUSTICE HENRY H. WHITING
January 11, 2002

FROM THE COURT OF APPEALS OF VIRGINIA

In this case we consider the admissibility of proffered expert opinions concerning the mental retardation of the defendant and the susceptibility of mentally retarded persons to suggestive police interrogation in connection with the defendant's contention that his confession was unreliable.

Livingston Pritchett, III, was indicted in Montgomery County for the capital murder and robbery of Estel Darnell Singleton, Sr., and for the use of a firearm in the commission of those two crimes. After a jury convicted him of first degree murder and of the remaining offenses, it recommended penitentiary sentences of life imprisonment for the murder conviction and several terms aggregating 13 years for the robbery and firearms convictions. Overruling various defense motions, the trial court entered judgment on the verdicts.

Pritchett appealed from his convictions to the Court of Appeals, contending that the trial court erred: (1) in admitting his confession because it was not voluntarily given and (2) in excluding expert testimony relating to his mental

retardation.  The Court of Appeals affirmed the convictions in an unpublished opinion.  <u>Pritchett v. Commonwealth</u>, Record No. 1430-l99-3 (December 12, 2000).  We awarded Pritchett this appeal limited to the second issue.

At 8:00 a.m. on April 30, 1997, Singleton's body was found with a single gunshot wound to his head in the picnic area of the Ironto Rest Stop on Interstate Highway 81 in Montgomery County.  Singleton's pockets had apparently been emptied and his wallet and other articles were found scattered near his body.  Although no automatic teller machine (ATM) card was found, there was an ATM receipt from a local bank in the wallet.

Upon contacting the bank, a police investigator ascertained that there had been an attempt to use the ATM card two days after Singleton's body was found.  The bank also furnished the investigators with videotape from its ATM camera which showed the man who had attempted to use the ATM card. One of the investigators recognized the man as Pritchett. Pritchett was known to some of the investigators because he had been a witness in a prior murder case and occasionally he had paid friendly visits to some of the officers at their offices.

An investigator arranged to have Pritchett come to the State Police Headquarters in Salem by telling him that the

2

investigator needed additional information concerning the prior case. The Commonwealth admits that this was a pretext; when Pritchett arrived, the questions eventually turned to the Singleton murder case.

Although the record does not reveal the contents of his initial statement to the investigators, Pritchett testified at trial that he had not been in the rest area where Singleton's body was found and he denied killing Singleton. Pritchett admitted, however, that he attempted to use Singleton's ATM card and that he used one of the credit cards. Pritchett claimed that he found these and other articles of personal property on the ground near a supermarket located some distance from the rest stop. Investigators had found personal property belonging to Singleton in Pritchett's motel room.

According to the testimony of Investigator Jerry Humphreys, during the investigative interviews Pritchett denied killing Singleton until Humphreys asked: "[W]hat went so terribly wrong that day that you had to kill Mr. Singleton at the Ironto Rest Area[?]" Describing Pritchett's response, Humphreys testified:

> [H]e didn't say anything at first, and then he said with anger in his voice, ["]he was [a] faggot, he came to the bathroom, pulled a gun and call me a nigger. I ran, we struggled, the gun went off["] and he maintained it was an accident when Mr. Singleton got shot.

3

Pritchett later proffered the testimony of two witnesses, both of whom qualified as experts in the field of psychology. Dr. Bernice Marcopulos, a clinical neuropsychologist, testified that tests she administered to Pritchett indicated that his intelligence quotient (IQ) was 69, placing Pritchett in the range of mildly retarded persons. Both she and Dr. Stephen Herrick, a forensic psychologist, testified concerning Pritchett's limited communication skills.

Dr. Herrick also testified that studies in his field of expertise indicated two factors which characterize people who "may be prone . . . to false confessions, and those are [1] compliance, people [who] generally day to day go along with [authority] figures, and [2] interrogative suggestibility which is an aspect of where in the moment that somebody is asking leading questions that they will go along with it." Dr. Herrick opined that "both these factors correlate very highly with people [who] have low I.Q.[s]."

Dr. Herrick further described a brief test he administered to Pritchett by reading him a story which Pritchett was asked to remember. The story was contained in a paragraph of approximately 40 words. Dr. Herrick then asked a series of 25 questions, 20 of which were leading. All the questions purported to reflect what was contained in the paragraph but the information in some of Dr. Herrick's leading

questions was not contained in the story. Yet, Pritchett's "yes" or "no" answers to those questions indicated that Pritchett believed he knew that information. When Pritchett was told that he had not answered a question correctly and that he needed to try to answer as best he could, Dr. Herrick testified that Pritchett "switched his answers thinking from the negative feedback that I was not happy with him so therefore . . . not only [is he] answering questions that weren't really in the story, but now he's changing his answers based on that slight negative feedback that I gave him."

Further, in describing Pritchett's limited communication skills, his prior friendly relations with the police, and other background information, Dr. Herrick also testified:

> . . . I think he just went along with what they said, and even at the point of asking to . . . contact his mother, or whatever, and got refusals[; he] basically was just told no. Well, he's not the type that's going to break through the doorway when an officer tells him no[;] he's going to sit and listen to him.

After hearing and considering the proffer of the testimony of the two experts, the trial court ruled that "such testimony would invade the province of the jury as to the ultimate issue of intent [when the alleged crime was committed]," and refused to permit any of it to be presented to the jury. The Court of Appeals approved this ruling on the

5

ground that there was no abuse of the trial court's discretion in excluding this evidence.

On appeal, Pritchett contends that the evidence was admissible to assist the jury in assessing the reliability of his confession, which conflicted with his trial testimony. The Commonwealth responds that the trial court did not abuse its discretion in excluding the evidence because "the average juror" understands the issues presented by the proffer; thus expert opinion on the issues is inadmissable.

While the court has the duty to determine whether Pritchett's confession was voluntary, it is the jury's duty to consider its reliability. Crane v. Kentucky, 476 U.S. 683, 688 (1986); Williams v. Commonwealth, 234 Va. 168, 175, 360 S.E.2d 361, 365 (1987), cert. denied, 484 U.S. 1020 (1988). "[T]he physical and psychological environment that yielded the confession can . . . be of substantial relevance to the ultimate factual issue of the defendant's guilt or innocence." Crane, 476 U.S. at 689. Under Crane, the Commonwealth and Pritchett were each entitled to introduce admissible evidence to assist the jury in determining whether the confession was reliable.

Expert testimony is admissible if the area of expertise to which the expert will testify is not within the range of the common experience of the jury. Coppola v. Commonwealth,

220 Va. 243, 252, 257 S.E.2d 797, 803 (1979), <u>cert. denied</u>, 444 U.S. 1103 (1980). Given the trial court's conclusion "that mental retardation is not within the range of common experience of most juries," expert testimony on certain aspects of mental retardation should be admissible to assist the jury in evaluating the reliability of his confession. But the trial court rejected the expert's testimony on the ground that it "would invade the province of the jury as to the ultimate issue of intent."[*]

An expert witness may not express an opinion as to the veracity of a witness because such testimony improperly invades the province of the jury to determine the reliability of a witness. <u>Fitzgerald v. Commonwealth</u>, 223 Va. 615, 630, 292 S.E.2d 798, 806 (1982), <u>cert. denied</u>, 459 U.S. 1288 (1983). Dr. Herrick's broad statement that Pritchett "just went along with what they said" could be construed as an evaluation of the unreliability of Pritchett's confession and a comment on the truth of that part of Pritchett's trial testimony which differed from his confession. So construed, it was an inadmissible statement regarding Pritchett's

---

[*]The trial court accepted the Commonwealth's argument at trial that the proffered testimony dealt with Pritchett's mental capacity at the time the alleged crimes occurred. On appeal, the Commonwealth correctly perceived that the testimony was directed to Pritchett's mental capacity at the time of his alleged confession.

veracity which the trial court correctly excluded as an invasion of the province of the jury. Coppola, 220 Va. at 252-53, 257 S.E.2d at 803-04.

But this Court has previously held that an expert may testify to a witness's or defendant's mental disorder and the hypothetical effect of that disorder on a person in the witness's or defendant's situation, so long as the expert does not opine on the truth of the statement at issue. Fitzgerald, 223 Va. at 629-30, 292 S.E.2d at 806; Coppola, 220 Va. at 252-53, 257 S.E.2d at 803-04. In the present case, the balance of the expert testimony did not characterize the truth of the statement of any witness - it merely presented information on subjects unfamiliar to the jury that would assist it in determining the reliability of Pritchett's confession. For that reason, this testimony should have been admitted.

Nevertheless, the Commonwealth argues that any such error was harmless. We do not agree with the Commonwealth. If the jury concluded that significant portions of the confession were not reliable, it might not have been willing to convict Pritchett solely on the circumstantial evidence presented by the Commonwealth, which was in sharp conflict with his denial of having killed Singleton. Given this conflict in the evidence, we cannot say that the error was harmless beyond a reasonable doubt.

Accordingly, we will affirm the case in part, reverse it in part, and remand it to the Court of Appeals with instructions to remand the case for a new trial.

<u>Affirmed in part,</u>
<u>reversed in part,</u>
<u>and remanded.</u>