*246 OPINION OF THE COURT
Victor M. Ort, J.
Defendant John Kogut moves for an ad limine ruling permitting him to introduce at the retrial of this indictment expert opinion testimony from Dr. Charles Honts, a polygraph expert. In May 1986 defendant was convicted of the rape and murder of Theresa Fusco. Codefendants John Restivo and Dennis Hal-stead, who were tried separately from Mr. Kogut, were convicted in December of that year. At Mr. Kogut’s prior trial, the People offered into evidence a detailed written statement which he had signed admitting to involvement in the crimes charged. That statement had been held to be voluntary by Judge O’Shaughnessy after a suppression hearing which was conducted prior to the first trial. Judge O’Shaughnessy found specifically that defendant’s oral statements given during the polygraph examination were voluntary and not the result of custodial interrogation. Judge O’Shaughnessy also concluded that, after the police determined that defendant failed the polygraph test, they had probable cause to arrest him. In June 2003, this court, upon consent of the People, granted defendants’ motions to vacate their judgments of conviction upon the ground that newly discovered DNA evidence appears to exculpate the defendants with respect to the rape charges.
Defendant offers the opinion of Dr. Honts to establish that he in fact passed the lie detector test which was administered to him by Detective Gruber in the course of his questioning by the police on the evening of March 25, 1985. Defendant contends that his decision to waive his right to remain silent and to confess to the crime was made in reliance upon a misrepresentation by Defective Gruber that he had failed the polygraph examination. Defendant seeks to introduce Dr. Honts’ testimony not as evidence-in-chief on the issue of guilt or innocence but rather to show that his confession was involuntary.
In arguing for the admissibility of expert opinion as to the lie detector results, defendant, relying upon Crane v Kentucky (476 US 683 [1986]), posits a fundamental fairness or due process right to present such evidence to the jury at least in cases where the central issue is the voluntariness of the defendant’s confession. The People urge a blanket exclusion of such evidence on the grounds that polygraphy is not generally accepted as reliable in the scientific community. (People v Angelo, 88 NY2d 217 [1996].)
In Crane v Kentucky (476 US 683 [1986]), the Supreme Court held that, by virtue of either the Due Process, Compulsory Pro *247 cess or Confrontation Clauses, defendant is guaranteed a meaningful opportunity to present a complete defense. However, Crane dealt not with a specific evidentiary ruling but rather the “wholesale exclusion” of potentially exculpatory evidence bearing on the physical circumstances surrounding the confession. (476 US at 691.) With respect to rulings on specific items of evidence, Crane recognized the power of states to apply evidentiary rules designed to serve “the interests of fairness and reliability.” (Id. at 690.) In the present case, the People are seeking to exclude not all evidence concerning the voluntariness of Mr. Kogut’s confession but only evidence concerning alleged misuse of the polygraph.
Crane makes clear that defendant does not have a constitutional right to present each and every specific type of voluntariness evidence to the jury. However, the Court of Appeals has not set forth a rule of blanket exclusion of polygraph evidence. Rather that Court has recognized that some states make an exception to the general rule of exclusion where the polygraph results are offered only for a limited purpose. (People v Leone, 25 NY2d 511 [1969].)
In determining the voluntariness of a confession, a jury is required to consider the totality of circumstances surrounding the interrogation. (People v Williams, 62 NY2d 285 [1984].) In People v Tarsia (50 NY2d 1, 11 [1980]), the Court of Appeals stated that there is no per se rule which makes confessions which follow on the heels of a voice stress or polygraph test inadmissible. However, the Court recognized that “it would be naive to assume that the potential for abuse does not exist.” (Id.) Thus, possible misuse of the polygraph is a factor which may be considered by the jury, although it is not in and of itself determinative, on the question of voluntariness of a confession. (See also People v Gerald, 128 AD2d 635 [2d Dept 1987]; People v Dyla, 142 AD2d 423 [2d Dept 1988]; People v Leonard, 59 AD2d 1 [2d Dept 1977].) So, while polygraph evidence is not admissible on the issue of guilt or innocence, if a proper foundation is established, such evidence may be admitted on the limited issue — which is central to this case — of the voluntariness of defendant’s confession. If defendant’s passing of the polygraph exam remains an issue at trial and defendant’s polygraph evidence is admitted, it will be accompanied by a limiting instruction that it may not be considered on the issue of guilt or innocence but only on the issue of the voluntariness of defendant’s confession.
*248 The court next proceeds to the issue of whether a pretrial determination of general acceptance in the scientific community is a precondition of admissibility. Evidence which is inherently unreliable may not be used for any purpose, including impeachment. (People v Hulls, 76 NY2d 190 [1990].) Thus, for example, statements of a witness which have been induced by hypnosis are so inherently unreliable that they may never be introduced into evidence at a criminal trial. On the other hand, novel scientific evidence, if proven at a Frye hearing to be generally accepted in the scientific community, is admissible for all purposes including the guilt or innocence of the defendant. (See e.g., People v Wesley, 83 NY2d 417 [1994].) In Wesley, it was determined after a Frye hearing that DNA is generally accepted in the scientific community, and indeed is so highly reliable that it is admissible for all purposes at a criminal trial.
The court notes that polygraph evidence seems to fall between these two extremes. While it is not sufficiently reliable to be generally accepted in the scientific community, it is not inherently unreliable and indeed is used -with increasing frequency in the private sector. (People v Leone, supra, 25 NY2d at 513-514.) Moreover, the fact that the Court of Appeals has acknowledged that polygraph evidence may be introduced for a limited purpose implies that a Frye hearing should be unnecessary. Indeed, if general acceptance in the scientific community were established at the hearing, the proffered evidence would be admissible for all purposes and there would be no need to issue a limiting instruction. Thus, the court rules that, assuming Dr. Honts is qualified as an expert in the field of polygraphy and that he used proper polygraph technique in analyzing the charts, his opinion that defendant passed the polygraph exam will be admissible without establishing that polygraphy is generally accepted as reliable in the scientific community.