IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| RICHARD J. NEYERS, | § | |
| | § | No. 450, 2022 |
| Defendant Below, | § | |
| Appellant, | § | Court Below:  Superior Court |
| | § | of the State of Delaware |
| v. | § | |
| | § | Cr. ID No. 1912023517 |
| STATE OF DELAWARE, | § | |
| | § | |
| Plaintiff Below, | § | |
| Appellee. | § | |

Submitted:  September 20, 2023
Decided:   November 9, 2023

Before **VALIHURA**, **TRAYNOR**, and **LEGROW**, Justices.

## <u>ORDER</u>

After consideration of the parties' briefs and the record on appeal, it appears to the Court that:

(1)     A Superior Court jury found the appellant, Richard J. Neyers, guilty of driving under the influence.  The results of a consensual blood draw, which were admitted at trial, showed Neyers's blood-alcohol content was 0.23.[1]  The State introduced those results through the testimony of the director of the Delaware State Police Crime Lab (the "DSPCL"), Julie Willey, who tested Neyers's blood sample

---

[1] *See* App. to Answering Br. at B41.  Under 21 *Del. C.* § 4177(a)(5), no person shall drive a vehicle when the person's blood-alcohol content is, within four hours after the time of driving, 0.08 or more.

and authored portions of the applicable version of the DSPCL's blood-draw protocol.[2] Under the protocol, after extracting a sample of the subject's blood into a tube, a phlebotomist mixes the blood with additives by inverting the tube.[3] The current protocol does not establish a required number of inversions, but the tube manufacturer recommends eight inversions in some settings.[4]

(2)     Before trial, the State moved to preclude Neyers from cross-examining Willey about the manufacturer's recommendation. It also sought to bar Neyers from arguing to the jury that the State's protocol was improper based on the manufacturer's recommendations. The State argued that the manufacturer's instructions were not relevant because the State's obligation is to comply with the DSPCL protocol, not the manufacturer's instructions.[5] In addition, the State argued that, even if the evidence was relevant, it should have been excluded because its admission risked confusing the issues and misleading the jury.[6]

(3)     The court ruled on the motion during trial but before Willey testified.[7] Concluding that the manufacturer's instructions were relevant to Willey's credibility, the court permitted Neyers's counsel to cross-examine Willey about the

---

[2] *Id.* at B39, B42–43.
[3] *Id.* at B43. In accordance with the protocol, a phlebotomist conducted Neyers's blood draw. *Id.* at B36–37.
[4] *Id.* at B43–44.
[5] *Id.* at B5–6.
[6] *Id.* at B7–8.
[7] *See* App. to Opening Br. at A24–26.

2

manufacturer's instructions.[8]  But the court prohibited Neyers's counsel from calling into question the propriety of the DSPCL protocol based on the manufacturer's instructions:

> Here's the line, Mr. Hurley.  The line is that I'm not going to let you argue to the jury that the State's procedure is improper.  . . .  You can argue that they didn't follow the procedure.  You cannot argue to the jury that the State procedure is improper.
>
> . . .
>
> I think some of this, Mr. Hurley, goes to credibility.  On that basis I'm going to let you question [Willey].  But remember, when you get up in closing, you're not going to be allowed to argue that the procedure is improper.[9]

(4)    Neyers's counsel extensively cross-examined Willey regarding changes she made to the DSPCL protocol as well as its purported departure from the manufacturer's instructions.[10]  Neyers's counsel did not address the propriety of the DSPCL protocol in closing argument.

(5)    On appeal, Neyers contends that the Superior Court's ruling was erroneous on constitutional[11] and evidentiary[12] grounds.   This Court reviews

---

[8] *Id.* at A26.
[9] *Id.* at A24–26.
[10] App. to Answering Br. at B41–45.
[11] Opening Br. at 9–16.
[12] *Id.* at 17–19.

evidentiary rulings for an abuse of discretion.[13] We review an alleged constitutional violation relating to a trial court's evidentiary ruling *de novo*.[14]

(6) In his opening brief, Neyers contends that the trial court improperly prohibited him from cross-examining Willey regarding the DSPCL protocol. According to Neyers, the court's purported prohibition on cross-examination (i) violated his Confrontation Clause and due process rights under the United States Constitution,[15] and (ii) improperly precluded him from interrogating the test results' reliability and thereby prevented Neyers from challenging their admissibility.[16] Both arguments share the same factual premise—that the trial court barred Neyers from cross-examining Willey regarding the reliability of the DSPCL protocol.[17] That premise is false. The trial court's ruling expressly permitted the cross-examination,[18] and Neyers's counsel actually cross-examined Willey regarding the DSPCL

---

[13] *Flonnory v. State*, 893 A.2d 507, 515 (Del. 2006).

[14] *Id.*

[15] Opening Br. at 9–16.

[16] *Id.* at 17–19.

[17] *See, e.g.*, *id.* at 9 ("Did the Trial Court's actions in prohibiting defense counsel from cross-examining the Laboratory Director . . . deprive the defendant of the Constitutional Right of Confrontation and Due Process of Law?"); *id.* at 17–18 ("The Court issued a ruling that prevented Neyers from effectively blocking the admissibility of Willey's proffered testimony by prohibiting the admission of evidence, through cross-examination and direct examination, which would serve to denigrate the establishment of the requisite foundation permitting the introduction of the blood test results in this matter.").

[18] App. to Opening Br. at A26 ("I think some of this, Mr. Hurley, goes to credibility. On that basis I'm going to let you question [Willey].").

protocol.[19]  In other words, the record does not support the arguments advanced in Neyers's opening brief.

(7)    In his reply brief, Neyers advances new arguments concerning the limitation on his closing argument.  That limitation, Neyers argues, violated his rights to effective assistance of counsel and to a meaningful opportunity to present a complete defense.[20]  Neyers contends that the arguments in his opening brief fairly encompass the new constitutional arguments raised in his reply brief.[21]  Accordingly, Neyers asserts that he did not waive them.[22]

(8)    An appellant's opening brief must "*fully* state the grounds for appeal, as well as the arguments *and supporting authorities* on each issue or claim of reversible error."[23]  A party's failure to "present and argue a legal issue in the text of an opening brief constitutes a waiver of that claim on appeal."[24]  Neyers, who is represented by counsel, did not specifically articulate in his opening brief the constitutional challenges identified in his reply brief.  Although he identified the

---

[19] App. to Answering Br. at B41–45.
[20] Reply Br. at 8–9.  The State first identified these issues as arguments Neyers could have raised. *See* Answering Br. at 17–18.  Observing that Neyers did not address these issues in his opening brief, however, the State argued that Neyers waived argument concerning those rights. *Id.* at 18. In the alternative, the State argued that the court's ruling did not violate those rights and that, even if a violation occurred, any error was harmless. *Id.* at 21–33.
[21] Reply Br. at 8–9.
[22] *See id.*
[23] *Flamer v. State*, 953 A.2d 130, 134 (Del. 2008) (emphasis in original).
[24] *Id.*; *see also Harris v. State*, 99 A.3d 227, 2014 WL 3883433, at *2 (Del. July 29, 2014) (TABLE) ("An appellant must state the merits of an argument in his opening brief or that argument will be waived.").

Confrontation and Due Process clauses as the sources of his claims on appeal, he did not articulate a violation of his right to "a meaningful opportunity to present a complete defense."[25] Indeed, the arguments in his opening brief were not based on the court's limitation of closing argument and instead focused on the purported (counter-factual) restriction on his ability to cross-examine Willey.[26] Neyers's contention that he did not waive arguments on purported violations of his right to assistance of counsel is even less persuasive. Although Neyers's Sixth Amendment right "to be confronted with the witnesses against" him appears alongside his right "to have the Assistance of Counsel" in the text of the Sixth Amendment,[27] those rights are not the same. Neyers's opening brief specifically identifies the Confrontation Clause, not the Assistance of Counsel Clause, as the basis for his claim on appeal.[28] Finally, Neyers's opening brief does not cite any authority for the proposition that the rights identified in his reply brief were violated.[29] As a result, Neyers waived any argument that the trial court violated his rights to assistance of counsel and to a meaningful opportunity to present a complete defense.[30]

---

[25] *Crane v. Kentucky*, 476 U.S. 683, 690 (1986) (quoting *California v. Trombetta*, 467 U.S. 479, 485 (1984)).

[26] *See, e.g.*, Opening Br. at 9.

[27] U.S. Const. amend. VI.

[28] *See* Opening Br. at 9.

[29] *Flamer*, 953 A.2d at 134 ("The failure to cite *any* authority in support of a legal argument constitutes a waiver of the issue on appeal." (emphasis in original)).

[30] To the extent that Neyers suggests that a limitation on closing argument constitutes a restriction on cross-examination, *see* Reply Br. at 7–8, that position is unpersuasive and Neyers does not cite

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior

Court is AFFIRMED.

BY THE COURT:

/s/ Abigail M. LeGrow
Justice

---

any authority to support it. Cross-examination and closing argument are distinct aspects of trial and serve different purposes.