# SUPREME COURT OF THE UNITED STATES

## LANDON HANK BLACK *v.* TENNESSEE

### ON PETITION FOR WRIT OF CERTIORARI TO THE COURT OF CRIMINAL APPEALS OF TENNESSEE, EASTERN DIVISION

No. 24–6586.  Decided June 30, 2025

The petition for a writ of certiorari is denied.

Statement of JUSTICE SOTOMAYOR respecting the denial of certiorari.

This case presents important constitutional questions about the way Tennessee instructs juries in voluntary manslaughter cases.  Because the court below did not grapple with those questions, I concur in the denial of certiorari.  I write separately to highlight the constitutional flaws in Tennessee's approach to manslaughter instructions, and to encourage the Tennessee Supreme Court to resolve them in the first instance.

A night out with a group of friends ended in tragedy when petitioner Landon Black fatally shot Brandon Lee during an altercation in the parking lot of a sports bar.  At Black's trial for murder, the prosecution and defense dissected the relationships between the people present at the bar that night.  Each sought to answer a basic question: What motivated Black to shoot Lee, a total stranger?  The prosecution, pursuing a first-degree murder conviction, argued that Black had originally planned to shoot someone else, a man who had "'humiliated and insulted'" him inside the bar. 2024 WL 2320284, *9 (Tenn. Crim. App., May 22, 2024).  When Black saw Lee, the prosecution said, he decided "[w]ithin seconds" to shoot him instead. *Ibid.*  The defense, meanwhile, argued that Lee, "who had just snorted cocaine, approached the car aggressively with his gun in his right hand," causing Black to shoot him "because he was in fear for his life." *Ibid.*

To allow the jury to decide between these rival theories of the case, the trial court instructed it on three different offenses: first-degree murder (requiring premeditation), second-degree murder (a voluntary killing without premeditation), and voluntary manslaughter (a killing driven by a state of passion caused by adequate provocation). Those instructions would have been unremarkable, except that two peculiar features of Tennessee law caused a significant problem. If the jury followed its instructions, it could never convict Black of voluntary manslaughter.

First, consider the elements of Tennessee second-degree murder and manslaughter. To obtain a conviction for second-degree murder, the State must establish an unlawful and voluntary (knowing) killing. See Tenn. Code Ann. §39–13–210(a) (2018); 2024 WL 2320284, *26. To obtain a manslaughter conviction, the prosecution must prove those same two elements, plus a third: that the defendant acted "in a state of passion induced by adequate provocation" (*i.e.*, "provocation sufficient to lead a reasonable person" to act irrationally). See §39–13–211(a) (Cum. Supp. 2024); 2024 WL 2320284, *26. Consequently, the prosecution must prove an additional element to obtain a manslaughter conviction, even though manslaughter is a less serious offense than second-degree murder.* Compare §39–13–211(b)

——————

*This transformation of the state-of-passion question from a traditional defense (raised by the defendant and disproved by the prosecution) into an element of the offense appears to have come about accidentally, by way of a line of dictum in *State* v. *Williams*, 38 S. W. 3d 532 (Tenn. 2001). There, the Tennessee Supreme Court remarked that "[c]omparing the revised second degree murder and voluntary manslaughter statutes, the essential element that now distinguishes these two offenses . . . is whether the killing was committed 'in a state of passion produced by adequate provocation.'" *Id.*, at 538. That comment in turn "has led any number of panels" of the Tennessee Court of Criminal Appeals "to conclude that 'a state of passion produced by adequate provocation' is an 'essential element' of the offense of voluntary manslaughter." *State* v. *Donaldson*, 2022 WL 1183466, *22 (Tenn. Crim. App., Apr. 21, 2022).

("Voluntary manslaughter is a Class B felony") with §39–13–210(c)(1) ("Second degree murder is a Class A felony).

Second, Tennessee courts instruct the jury to consider each offense in order of seriousness, beginning with the charged offense. Here is that instruction as it was given to Black's jury:

> "'In reaching your verdict, you shall, first, consider the offense charged in the Presentment. If you unanimously find a defendant guilty of that offense beyond a reasonable doubt, you shall return a verdict of guilty for that offense. If you unanimously find the defendant not guilty of that offense or have a reasonable doubt of the defendant's guilt of that offense, you shall then proceed to consider whether or not the defendant is guilty of the next lesser-included offense in order from greatest to least within that Count of the Presentment. *You shall not proceed to consider any lesser-included offense until you have first made a unanimous determination that the defendant is not guilty of the immediately-preceding greater offense* or you unanimously have a reasonable doubt of the defendant's guilt of that offense.'" Pet. for Cert. 7 (emphasis added).

These two instructions, taken together, mean that no jury instructed on both second-degree murder and manslaughter could ever reach a manslaughter verdict. If a jury finds a killing to be knowing and unlawful, it has found all the necessary elements for a second-degree murder conviction. At that point, the jury "shall not proceed to consider" the lesser included offense of manslaughter, *ibid.*, meaning it will never consider whether the killing was provoked.

That is just what happened in Black's case. The jury rejected the first-degree murder charge, reached the second-degree murder question on its verdict form, and found that Black's killing had been knowing and unlawful. The instructions then prohibited the jury from continuing to the

next lesser included offense. The jury thus convicted Black of second-degree murder.

That result raises serious federal constitutional questions. Half a century ago, this Court held "that the Due Process Clause requires the prosecution to prove beyond a reasonable doubt the *absence* of the heat of passion on sudden provocation when the issue is properly presented in a homicide case." *Mullaney* v. *Wilbur*, 421 U. S. 684, 704 (1975) (emphasis added). Drawing on *Mullaney*, Black argued below that it was error to treat "'state of passion' as an essential element of the offense that the State must prove beyond a reasonable doubt," because "'state of passion' is actually a defense to second degree murder that, if fairly raised by the proof, must be disproved by the State beyond a reasonable doubt." 2024 WL 2320284, *28 (describing Black's argument); see also App. to Brief in Opposition 120, 148–149 (Black's briefing before the Tennessee Court of Criminal Appeals). Notwithstanding *Mullaney*, the court held that the State was not required to establish the absence of a state of passion beyond a reasonable doubt, apparently because it felt bound by state law. 2024 WL 2320284, *28–*29. Whatever Tennessee law says about manslaughter, however, the court below was not free to disregard *Mullaney*.

So too, "the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'" *Crane* v. *Kentucky*, 476 U. S. 683, 690 (1986) (quoting *California* v. *Trombetta*, 467 U. S. 479, 485 (1984)). Here, Tennessee's jury instructions made it legally impossible for Black to succeed on a critical element of his defense: the argument that Lee's threatening approach with a gun in his hand constituted adequate provocation. It is hard to imagine that a set of jury instructions rendering it legally impossible for the jury to accept a legitimate defense could pass muster under the Due Process Clause. See *State* v. *Humphrey*, 2005 WL 2043778, *14–*15 (Tenn. Crim. App., Aug. 24,

2005) (Tipton, J., concurring) (warning that sequential jury instruction on manslaughter could violate the Due Process Clause); *Edge* v. *State*, 261 Ga. 865, 867, 414 S. E. 2d 463, 466 (1992) (invalidating conviction because a similar "'sequential' charge eliminate[d] the jury's full consideration of voluntary manslaughter" by preventing it from "go[ing] on to consider evidence of provocation or passion").

The Tennessee Court of Criminal Appeals has acknowledged that the State's present approach to manslaughter is a source of endless confusion. See *State* v. *Donaldson*, 2022 WL 1183466, \*22, \*24 (Tenn. Crim. App. Apr. 21, 2022) (decrying "[c]onfusion about the passion/provocation construct" and "ask[ing], as other panels have done since as early as 2004, that our supreme court address this issue"). Indeed, it has been clear for years that the instructions used in this case are wholly unworkable.

One problem, illustrated here, is that Tennessee treats voluntary manslaughter as a "lesser-included offense" of second-degree murder. *State* v. *Wilson*, 92 S. W. 3d 391, 396 (Tenn. 2002). Ordinarily, one offense can be a lesser included offense of another only if its elements are a subset of the more serious crime. *Schmuck* v. *United States*, 489 U. S. 705, 716 (1989) (adopting this "elements" approach). Yet here the opposite is true: The elements of second-degree murder (the more serious offense) are a subset of the elements of manslaughter (the lesser included offense). The Tennessee Supreme Court has thus far declined to explain how courts should square that doctrinal circle. It is hard to see how they could.

Tennessee's manslaughter instructions have led "to absurd results" disadvantaging the State, as well. *Donaldson,* 2022 WL 1183466, \*23. Treating provocation as an element means that, even if the State has established a voluntary killing, "a reviewing court has no choice but to reverse" the conviction if the State has not also established provocation. *Ibid.* For example, in *State* v. *Lumpkin*, 2020 WL 7682239,

*2 (Tenn. Crim. App., Dec. 23, 2020), the defendant shot his victim in the head in the course of a robbery. "No evidence," however, suggested "that the perpetrator who shot the victim in the head acted in a state of 'passion,' produced by 'adequate provocation.'" *Id*., at *6. Thus, even though the evidence "would have supported" a second-degree murder conviction, the court felt itself bound to invalidate the conviction for manslaughter. *Ibid.*; see also *State* v. *Benesch*, 2017 WL 3670196, *18–*19 (Tenn. Crim. App., Aug. 25, 2017) (modifying manslaughter conviction for similar reasons). Those cases, like this one, make plain that Tennessee's approach to manslaughter is untenable. Accord, *Donaldson*, 2022 WL 1183466, *22–*24.

The State defends the judgment below on the ground that Black forfeited his federal arguments. The record suggests the contrary. See App. to Brief in Opposition 120, 148–149. Nevertheless, by focusing on the ongoing state-law dispute over the elements of manslaughter, the court below appears to have overlooked Blacks' constitutional claims entirely. I thus concur in the Court's denial of certiorari. Given the serious constitutional problems with Tennessee's manslaughter instructions, however, I join the Tennessee Court of Criminal Appeals in encouraging the Tennessee Supreme Court to reconsider its approach. *Donaldson*, 2022 WL 1183466, *24. If that court does not, this Court should consider the constitutionality of Tennessee's manslaughter instructions in an appropriate case.